IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VAN A. PEÑA,

        Plaintiff,

    v.

JUDITH BJORNDAL,

        Defendant.

_____/

No. C 00-4009 CW

PRELIMINARY JURY
INSTRUCTIONS

**DUTY OF THE JURY**

    Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

    These are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial and refer to it.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

    You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

    It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you

United States District Court

For the Northern District of California

must decide the case solely on the evidence before you.  You took
an oath to do so.

In following my instructions, you must follow all of them and
not single out some and ignore others; they are all important.

## CLAIMS AND DEFENSES

I will give you a brief summary of the positions of the
parties:

The Plaintiff, Dr. Van Peña, claims that the Defendant, Dr.
Judith Bjorndal, violated his rights under the First Amendment of
the United States Constitution when she terminated his employment
as a physician at the Sonoma Developmental Center.  He claims that
Dr. Bjorndal fired him because he had previously filed a lawsuit
against other employees of the Center alleging that he had been
retaliated against for speaking out on patient abuse and
malpractice and because he photographed patients' injuries to
document such abuse and malpractice.  Dr. Peña claims that the
reasons Dr. Bjorndal gave for her actions were a pretext to
disguise her true motivation.  Dr. Peña has the burden of proving
this claim.

Dr. Bjorndal denies Dr. Peña's claim that she terminated his
employment because of his prior lawsuit and photography of
patients.  Dr. Bjorndal contends that she fired Dr. Peña because of
misconduct in connection with a Do Not Resuscitate Order for a
patient.

## BURDEN OF PROOF

When a party has the burden of proof on any claim or
affirmative defense by a preponderance of the evidence, it means
you must be persuaded by the evidence that the claim or affirmative

2

defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**WHAT IS EVIDENCE**

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they will say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition, some testimony and exhibits may be received only for a limited purpose; if I give a limiting instruction, you must follow it.

3

**United States District Court**
For the Northern District of California

1   (4) Anything you see or hear when the Court is not in session

2   is not evidence.  You are to decide the case solely on the evidence

3   received at the trial.

**EVIDENCE FOR LIMITED PURPOSE**

5   Some evidence may be admitted for a limited purpose only.  If

6   I instruct you that an item of evidence is being admitted for a

7   limited purpose, you must consider it only for that limited purpose

8   and for no other.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

10   Evidence may be direct or circumstantial.  Direct evidence is

11   direct proof of a fact, such as testimony by a witness about what

12   that witness personally saw or heard or did.  Circumstantial

13   evidence is proof of one or more facts from which you could find

14   another fact.  You should consider both kinds of evidence.  The law

15   makes no distinction between the weight to be given to either

16   direct or circumstantial evidence.  It is for you to decide how

17   much weight to give to any evidence.

**RULING ON OBJECTIONS**

19   There are rules of evidence that control what can be received

20   into evidence.  When a lawyer asks a question or offers an exhibit

21   into evidence and a lawyer on the other side thinks that it is

22   not permitted by the rules of evidence, that lawyer may object.  If

23   I overrule the objection, the question may be answered or the

24   exhibit received.  If I sustain the objection, the question cannot

25   be answered, and the exhibit cannot be received. Whenever I sustain

26   an objection to a question, you must ignore the question and must

27   not guess what the answer might have been.

28   Sometimes I may order that evidence be stricken from the

4

record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

### CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)   the opportunity and ability of the witness to see or hear or know the things testified to;

(2)   the witness's memory;

(3)   the witness's manner while testifying;

(4)   the witness's interest in the outcome of the case and any bias or prejudice;

(5)   whether other evidence contradicts the witness's testimony;

(6)   the reasonableness of the witness's testimony in light of all the evidence; and

(7)   any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

### EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Expert opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much

United States District Court
For the Northern District of California

weight as you think it deserves, considering the witness's
education and experience, the reasons given for the opinion and all
the other evidence in the case.

**OVERVIEW OF APPLICABLE LAW - CIVIL RIGHTS CLAIM**

Dr. Peña brings his claim under the federal civil rights
statute, which provides that any person who, under color of law,
deprives another of any rights secured by the Constitution of the
United States shall be liable to the injured party.

**CIVIL RIGHTS CLAIM - ELEMENTS AND BURDEN OF PROOF**

In order to prevail on his civil rights claim against Dr.
Bjorndal, Dr. Peña must prove each of the following elements by a
preponderance of the evidence:

(1)  Dr. Bjorndal acted under color of law; and

(2)  Dr. Bjorndal's acts deprived Dr. Peña of a right he has
     under the United States Constitution.

A person acts "under color of law" when the person acts in the
performance of official duties under law.  The parties have agreed
that Dr. Bjorndal acted under color of law.

If you find Dr. Peña has proved that Dr. Bjorndal's acts
deprived Dr. Peña of a right he has under the United States
Constitution, your verdict should be for Dr. Peña.  If, on the
other hand, he has failed to prove this, your verdict should be for
Dr. Bjorndal.

**CONSTITUTIONAL RIGHT: FIRST AMENDMENT FREEDOM OF SPEECH**

The constitutional right that Dr. Peña alleges Dr. Bjorndal
deprived him of is his right to freedom of speech under the First
Amendment to the Constitution.  The right to free speech includes
the right to expressive conduct.  Dr. Peña claims that his

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

protected speech was the lawsuit he had previously filed against other employees of the Sonoma Developmental Center, and his photography of patients' injuries.  The lawsuit and photography constitute speech because they demonstrate Dr. Peña's intent to convey particular messages.  The right to free speech includes the right not be retaliated against for engaging in expressive conduct. Retaliation can take the form of an adverse employment action taken against an employee.  Dr. Peña claims that Dr. Bjorndal retaliated against him for his expressive conduct when she admonished him for taking photographs of patients and later terminated his employment as a physician at the Sonoma Developmental Center.

In order to prove Dr. Bjorndal deprived him of his First Amendment rights, Dr. Peña must prove the following by a preponderance of the evidence:

    (1)  Dr. Bjorndal took an adverse employment action against
         Dr. Peña; and

    (2)  Dr. Peña's protected speech was a substantial or
         motivating factor for the adverse employment action.

### ADVERSE EMPLOYMENT ACTION

Dr. Peña claims that the adverse employment actions Dr. Bjorndal took against him were to admonish him for taking the photographs of patients and to terminate his employment.  An action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from engaging in protected activity. Termination is an adverse employment action.  It is for you to decide whether any admonition was an adverse employment action. \\

7

United States District Court
For the Northern District of California

### SUBSTANTIAL OR MOTIVATING FACTOR

A substantial or motivating factor is a significant factor. In order for protected speech to be a substantial or motivating factor for an employment decision, the employer, of course, must be aware of the speech.  Here, Dr. Bjorndal cannot be held liable for taking adverse action against Dr. Peña because of his protected speech unless Dr. Peña proves by a preponderance of the evidence that Dr. Bjorndal was aware of that speech.  She agrees that she was aware of Dr. Peña's photography of patients, but she denies that she was aware of his earlier lawsuit against other employees.

### DR. BJORNDAL'S DEFENSE

Dr. Bjorndal claims that if she admonished Dr. Peña about photographing patients, it was to protect the patients' privacy, not to prevent Dr. Peña from documenting patient abuse and malpractice or to retaliate against him for doing so.  She claims that she did not terminate him because of the photography, or because of his prior lawsuit against other employees, which, as noted above, she claims she did not know about.  She claims, instead, that she terminated him because of his misconduct with regard to a Do Not Resuscitate order that he issued for a patient.

You will hear evidence about this order, often referred to as a DNR order.  The patient who was the subject of the DNR order will be referred to as Elizabeth R.  She was an elderly, developmentally disabled patient at the Sonoma Developmental Center who was suffering from renal failure, that is, kidney failure.  Dr. Peña wrote a DNR Order for Elizabeth R. on March 3, 2001, and Dr. Bjorndal reversed the order.

Developmentally disabled persons residing in a state hospital

8

United States District Court
For the Northern District of California

have the right to give or withhold consent for treatments and
procedures, unless a judicial order or other law provides for
another person to make these decisions for the patient.

The parties dispute what Elizabeth R.'s wishes were.  However,
they agree that, apart from her wishes, a DNR order would have been
medically appropriate as of March 3, 2001, because she appeared to
be in the final stages of a terminal illness.  Cardiopulmonary
resuscitation, which will be referred to as CPR, was unlikely to
revive her and, in any event, could not reverse her underlying
disease processes.  CPR carries the risk of causing the patient
unintended pain or injuries, including fractured ribs or bruising
of internal organs.  You are bound by the parties' agreement on
this aspect of the case.

This is not a wrongful termination lawsuit.  You will not be
asked to determine whether or not the reasons Dr. Bjorndal has
given for firing Dr. Peña would be fair reasons for firing him.
Likewise, you will not be asked to decide how the end-of-life care
for Elizabeth should have been managed, or whether CPR or a DNR
Order was the correct approach for this patient from a medical
perspective.  You will not be asked to determine the wisdom of
medical decisions that were made for this patient.  Similarly, you
will not be asked to decide the merit of Dr. Peña's prior lawsuit.
The outcome of that lawsuit is not relevant to this trial.  You
should not speculate about the results of that lawsuit.

Instead, you will be asked to decide whether Dr. Bjorndal
fired Dr. Peña for the reasons that she gave at the time she fired
him, or whether her true motivation was to retaliate against Dr.
Peña for engaging in conduct protected by the First Amendment,

1  photographing patients and filing a previous lawsuit.

2  **PUBLIC EMPLOYEES' QUALIFIED FREE SPEECH RIGHTS**

3  Under the First Amendment, a public employee like Dr. Peña has

4  free speech rights, but his rights are qualified.  He has a right

5  to speak as a citizen on matters of public concern.  As an

6  employee, however, his speech and conduct in connection with his

7  official duties can be regulated by his employer.  To recover for

8  an adverse employment action based on expressive conduct related to

9  his employment, Dr. Peña must prove that:

10  (1) Dr. Peña acted as a citizen and not as part of his

11  official duties; and

12  (2) his action was on a matter of public concern.

13  Dr. Peña's prior lawsuit was expressive conduct taken as a

14  citizen on a matter of public concern.  However, it is for you to

15  decide if Dr. Peña acted as a citizen, not as part of his official

16  duties, when he took photographs of patients.  In other words, you

17  must decide whether the photography was done as a part of his

18  professional responsibilities.

19  Every physician, employed by the Department of Developmental

20  Services at the Sonoma Developmental Center, is under a legal duty

21  to report any patient abuse, including medical malpractice.

22  However, the photography was not necessarily done as part of his

23  official duties simply because it took place at his workplace or

24  because it concerned the subject matter of his employment.

25  **DEFENDANT'S MIXED MOTIVE DEFENSE**

26  Even if Dr. Peña proves each element of his claim that he was

27  retaliated against for engaging in protected speech under the First

28  Amendment, Dr. Bjorndal can escape liability by proving by a

United States District Court
For the Northern District of California

preponderance of the evidence that

>    (1)   she had a non-retaliatory reason for taking the adverse
>          action(s) and

>    (2)   it is more likely than not that she would have taken the
>          same adverse action(s) for the non-retaliatory reason in
>          the absence of the protected speech.

Dr. Bjorndal contends that, regardless of Dr. Peña's patient photography and his earlier lawsuit, she would have terminated his employment anyway because she believed that he engaged in misconduct when he wrote the DNR order for Elizabeth R. and failed to inform her of the circumstances.

**DAMAGES - PROOF**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Dr. Peña, you must determine his damages.  He has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate him for any injury you find was caused by Dr. Bjorndal.  You should consider the following: the nature and extent of the injuries; the loss of enjoyment of life experienced; the mental pain and suffering experienced and which with reasonable probability will be experienced in the future; the reasonable value of earnings lost to the present time; the reasonable value of earnings which with reasonable probability will be lost in the future.  It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**DAMAGES – MITIGATION**

Dr. Peña has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

Dr. Bjorndal has the burden of proving by a preponderance of the evidence:

(1) that Dr. Peña failed to use reasonable efforts to mitigate damages; and

(2) the amount by which damages would have been mitigated.

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else.  You may not discuss the case on the internet.  Nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or anything on the internet about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep

12

1    an open mind until then.

2         Finally, until this case is given to you for your deliberation

3    and verdict, you are not to discuss the case with your fellow

4    jurors.

5                 **NO TRANSCRIPT AVAILABLE TO JURY**

6         During deliberations, you will have to make your decision

7    based on what you recall of the evidence.  You will not have a

8    transcript of the trial. I urge you to pay close attention to the

9    testimony as it is given.

10        If at any time you cannot hear or see the testimony, evidence,

11   questions or arguments, let me know so that I can correct the

12   problem.

13                        **TAKING NOTES**

14        If you wish, you may take notes to help you remember the

15   evidence.  If you do take notes, please keep them to yourself until

16   you and your fellow jurors go to the jury room to decide the case.

17   Do not let note-taking distract you.  When you leave, your notes

18   should be left in the jury room.  No one will read your notes.

19   They will be destroyed at the conclusion of the case.

20        Whether or not you take notes, you should rely on your own

21   memory of the evidence.  Notes are only to assist your memory.  You

22   should not be overly influenced by your notes or those of your

23   fellow jurors.

24              **QUESTIONS TO WITNESSES BY JURORS**

25        You may propose written questions to witnesses.  You may

26   propose questions in order to clarify the testimony, but you are

27   not to express any opinion about the testimony or argue with a

28   witness.  If you propose any questions, remember that your role is

**United States District Court**
For the Northern District of California

13

that of a neutral fact finder, not an advocate.

If you wish to ask a question, you may write out your question on a form provided by the court.  Do not sign the question.  Give it to the courtroom deputy clerk during one of your breaks.  I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording you submit.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner as you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so.  It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

### OUTLINE OF TRIAL

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

After opening statements, Dr. Peña will present evidence. After Dr. Peña's counsel questions a witness, Dr. Bjorndal's counsel may cross-examine the witness.  During Dr. Peña's presentation of evidence, the Court may, for efficiency reasons,

14

require Dr. Bjorndal's counsel to conduct his examination of the witness following Dr. Peña's examination.  When Dr. Peña has concluded his presentation of evidence, Dr. Bjorndal may present additional evidence, and Dr. Peña's counsel may cross-examine.

    After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.  After that, you will go to the jury room to deliberate on your verdict.  After you have reached your verdict, you will be excused.

Dated: November 16, 2009

CLAUDIA WILKEN
United States District Judge