IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VAN A. PEÑA,

    Plaintiff,

v.

JUDITH BJORNDAL,

    Defendant.

No. C 00-4009 CW

FINAL JURY INSTRUCTIONS

**DUTY OF THE JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. You should discard the preliminary instructions; the final instructions control and you need not concern yourselves with differences between them and the preliminary instructions. You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**CLAIMS AND DEFENSES**

The Plaintiff, Dr. Van Peña, claims that the Defendant, Dr. Judith Bjorndal, violated his rights under the First Amendment of the United States Constitution when she terminated his employment as a physician at the Sonoma Developmental Center. He claims that Dr. Bjorndal fired him because he had previously filed a lawsuit against other employees of the Center alleging that he had been retaliated against for speaking out on patient abuse and malpractice and because he photographed patients' injuries to document such abuse and malpractice. Dr. Peña claims that the reasons Dr. Bjorndal gave for her actions were a pretext to disguise her true motivation. Dr. Peña has the burden of proving this claim.

Dr. Bjorndal denies Dr. Peña's claim that she terminated his employment because of his prior lawsuit and photography of patients. Dr. Bjorndal contends that she fired Dr. Peña because of misconduct in connection with a Do Not Resuscitate Order for a patient.

**BURDEN OF PROOF**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

2

**WHAT IS EVIDENCE**

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered. In addition, some testimony and exhibits were received only for a limited purpose; if I gave a limiting instruction, you must follow it.

(4) Anything you see or hear when the Court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

3

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may have been admitted for a limited purpose only. If I instructed you that an item of evidence was being admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the witness was permitted to answer the question. If I sustained the objection, the witness was not permitted to answer the question. If I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

4

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicts the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**EXPERT OPINION**

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion and all the other evidence in the case.

5

**OVERVIEW OF APPLICABLE LAW - CIVIL RIGHTS CLAIM**

Dr. Peña brings his claim under the federal civil rights statute, which provides that any person who, under color of law, deprives another of any rights secured by the Constitution of the United States shall be liable to the injured party.

**CIVIL RIGHTS CLAIM - ELEMENTS AND BURDEN OF PROOF**

In order to prevail on his civil rights claim against Dr. Bjorndal, Dr. Peña must prove each of the following elements by a preponderance of the evidence:

(1) Dr. Bjorndal acted under color of law; and

(2) Dr. Bjorndal's acts deprived Dr. Peña of a right he has under the United States Constitution.

A person acts "under color of law" when the person acts in the performance of official duties under law. The parties have agreed that Dr. Bjorndal acted under color of law.

If you find Dr. Peña has proved that Dr. Bjorndal's acts deprived Dr. Peña of a right he has under the United States Constitution, your verdict should be for Dr. Peña. If, on the other hand, he has failed to prove this, your verdict should be for Dr. Bjorndal.

**CONSTITUTIONAL RIGHT: FIRST AMENDMENT FREEDOM OF SPEECH**

The constitutional right that Dr. Peña alleges Dr. Bjorndal deprived him of is his right to freedom of speech under the First Amendment to the Constitution. The right to free speech includes the right to expressive conduct. Dr. Peña claims that his protected speech was the lawsuit he had previously filed against other employees of the Sonoma Developmental Center, and his photography of patients' injuries. The lawsuit and photography

6

constitute speech because they demonstrate Dr. Peña's intent to convey particular messages. The right to free speech includes the right not be retaliated against for engaging in expressive conduct. Retaliation can take the form of an adverse employment action taken against an employee. Dr. Peña claims that Dr. Bjorndal retaliated against him for his expressive conduct when she terminated his employment as a physician at the Sonoma Developmental Center.

In order to prove Dr. Bjorndal deprived him of his First Amendment rights, Dr. Peña must prove the following by a preponderance of the evidence:

(1) Dr. Bjorndal took an adverse employment action against Dr. Peña; and

(2) Dr. Peña's protected speech was a substantial or motivating factor for the adverse employment action.

### ADVERSE EMPLOYMENT ACTION

The parties agree that Dr. Bjorndal terminated Dr. Peña's employment, and that termination is an adverse employment action.

### SUBSTANTIAL OR MOTIVATING FACTOR

A substantial or motivating factor is a significant factor. In order for protected speech to be a substantial or motivating factor for an employment decision, the employer, of course, must be aware of the speech. Here, Dr. Bjorndal cannot be held liable for taking adverse action against Dr. Peña because of his protected speech unless Dr. Peña proves by a preponderance of the evidence that Dr. Bjorndal was aware of that speech. She agrees that she was aware of Dr. Peña's photography of patients, but she denies that she was aware of his earlier lawsuit against other employees.

7

**DR. BJORNDAL'S DEFENSE**

Dr. Bjorndal claims that if she admonished Dr. Peña about photographing patients, it was to protect the patients' privacy, not to prevent Dr. Peña from documenting patient abuse and malpractice. She claims that she did not terminate him because of the photography, or because of his prior lawsuit against other employees, which, as noted above, she claims she did not know about. She claims, instead, that she terminated him because of his misconduct with regard to a Do Not Resuscitate order that he issued for a patient.

You heard evidence about this order, often referred to as a DNR order. The patient who was the subject of the DNR order was referred to as Elizabeth R. She was an elderly, developmentally disabled patient at the Sonoma Developmental Center who was suffering from renal failure, that is, kidney failure. Dr. Peña wrote a DNR Order for Elizabeth R. on March 3, 2001, and Dr. Bjorndal reversed the order.

Developmentally disabled persons residing in a state hospital have the right to give or withhold consent for treatments and procedures, unless a judicial order or other law provides for another person to make these decisions for the patient.

The parties dispute what Elizabeth R.'s wishes were. However, they agree that, apart from her wishes, a DNR order would have been medically appropriate as of March 3, 2001, because she appeared to be in the final stages of a terminal illness. Cardiopulmonary resuscitation, which was referred to as CPR, was unlikely to revive her and, in any event, could not reverse her underlying disease processes. CPR carries the risk of causing the patient unintended

8

pain or injuries, including fractured ribs or bruising of internal organs.  You are bound by the parties' agreement on this aspect of the case.

This is not a wrongful termination lawsuit.  You are not asked to determine whether or not the reasons Dr. Bjorndal has given for firing Dr. Peña would be fair reasons for firing him.  Likewise, you are not asked to decide how the end-of-life care for Elizabeth should have been managed, or whether CPR or a DNR Order was the correct approach for this patient from a medical perspective.  You are not asked to determine the wisdom of medical decisions that were made for this patient.  Similarly, you are not asked to decide the merit of Dr. Peña's prior lawsuit. The outcome of that lawsuit is not relevant to this trial.  You should not speculate about the results of that lawsuit.

Instead, you are asked to decide whether Dr. Bjorndal fired Dr. Peña for the reasons that she gave at the time she fired him, or whether her true motivation was to retaliate against Dr. Peña for engaging in conduct protected by the First Amendment, photographing patients and filing a previous lawsuit.

**PUBLIC EMPLOYEES' QUALIFIED FREE SPEECH RIGHTS**

Under the First Amendment, a public employee like Dr. Peña has free speech rights, but his rights are qualified.  He has a right to speak as a citizen on matters of public concern.  As an employee, however, his speech and conduct in connection with his official duties can be regulated by his employer.  To recover for an adverse employment action based on expressive conduct related to his employment, Dr. Peña must prove that:

(1) Dr. Peña acted as a citizen and not as part of his

9

official duties; and

    (2) his action was on a matter of public concern.

Dr. Peña's prior lawsuit was expressive conduct taken as a citizen on a matter of public concern. However, it is for you to decide if Dr. Peña acted as a citizen, not as part of his official duties, when he took photographs of patients. In other words, you must decide whether the photography was done as a part of his job responsibilities.

Every physician, employed by the Department of Developmental Services at the Sonoma Developmental Center, is under a legal duty to report any patient abuse, including medical malpractice. However, the photography was not necessarily done as part of his official duties simply because it took place at his workplace or because it concerned the subject matter of his employment.

### DR. BJORNDAL'S AFFIRMATIVE MIXED MOTIVE DEFENSE

Even if Dr. Peña proves each element of his claim that he was retaliated against for engaging in protected speech under the First Amendment, Dr. Bjorndal can escape liability by proving by a preponderance of the evidence that

    (1) she had a non-retaliatory reason for taking the adverse action(s) and

    (2) it is more likely than not that she would have taken the same adverse action(s) for the non-retaliatory reason in the absence of the protected speech.

Dr. Bjorndal contends that, regardless of Dr. Peña's patient photography and his earlier lawsuit, she would have terminated his employment anyway because she believed that he engaged in misconduct when he wrote the DNR order for Elizabeth R. and failed

10

to inform her of the circumstances.

### DAMAGES – PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Dr. Peña, you must determine his damages. He has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate him for any injury you find was caused by Dr. Bjorndal. You should consider the following: the nature and extent of the injuries; the loss of enjoyment of life experienced; the mental pain and suffering experienced and which with reasonable probability will be experienced in the future; the reasonable value of earnings lost to the present time; the reasonable value of earnings which with reasonable probability will be lost in the future. It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

### DAMAGES – MITIGATION

Dr. Peña has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Dr. Bjorndal has the burden of proving by a preponderance of the evidence:

(1) that Dr. Peña failed to use reasonable efforts to mitigate damages; and

(2) the amount by which damages would have been mitigated.

11

**DAMAGES ARISING IN THE FUTURE - DISCOUNT TO PRESENT CASH VALUE**

Any award for future economic damages must be for the present cash value of those damages.

Noneconomic damages, such as pain and suffering, are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred.

## PUNITIVE DAMAGES

If you find for Dr. Pena, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.

Punitive damages may not be awarded to compensate Dr. Pena.

Dr. Pena has the burden of proving by a preponderance of the evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that Dr. Bjorndal's conduct that harmed Dr. Pena was malicious, oppressive or in reckless disregard of Dr. Pena's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary

12

harshness or severity, such as by the misuse or abuse of authority or power.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of Dr. Bjorndal's conduct, including whether the conduct that harmed Dr. Pena was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish Dr. Bjorndal for harm to anyone other than Dr. Pena in this case. In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on Dr. Pena.

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial.

**USE OF NOTES**

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was

13

said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

### COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the Court.

### RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the Court that you are ready to return to the courtroom.

Dated: November 24, 2009

_____
CLAUDIA WILKEN
United States District Judge