IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAN A. PENA, | No. C 00-4009 CW |
| Plaintiff, | PRELIMINARY JURY INSTRUCTIONS |
| v. | |
| JUDITH BJORNDAL, | |
| Defendant. | |
| _____/ | |

## DUTY OF THE JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial and refer to it.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.

That means that you must decide the case solely on the evidence before you.  You took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## CLAIMS AND DEFENSES

I will give you a brief summary of the positions of the parties:

Plaintiff Dr. Van Peña claims that Defendant Dr. Judith Bjorndal violated his rights under the First Amendment of the United States Constitution when she terminated his employment as a physician at the Sonoma Developmental Center.  He claims that Dr. Bjorndal fired him because (1) he filed a lawsuit alleging that he was being retaliated against for speaking out about patient abuse and malpractice at the Sonoma Developmental Center, (2) he photographed patients' injuries to document such abuse and malpractice, (3) he filed a complaint with the California Department of Health Services alleging that photographs documenting patient injuries were being removed improperly from the patients' records, and (4) he complained to SDC Police Chief Ed Contreras.  Dr. Peña claims that the reasons Dr. Bjorndal gave for her actions were a pretext to disguise her true motivation.  Dr. Peña has the burden of proving this claim.

Dr. Bjorndal denies Dr. Peña's claim that she terminated his employment because of his prior lawsuit, communications with Contreras and the California Department of Health Services, or photography of patients.  Dr. Bjorndal contends that she fired Dr. Peña because of misconduct in connection with a Do Not Resuscitate Order for a patient, because he failed to inform her of the

2

circumstances surrounding the Do Not Resuscitate Order, often referred to as a DNR Order, and because he was dishonest in the ensuing investigation.

Dr. Bjorndal also asserts an affirmative defense that she would have terminated Dr. Peña's employment because of his improper conduct while working at the Sonoma Developmental Center, regardless of his prior lawsuit, photography, communication with Contreras and complaints to the California Department of Health Services.  Dr. Bjorndal has the burden of proving this affirmative defense.  Dr. Peña denies the claims of this affirmative defense.

## BURDEN OF PROOF

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

   (1) the sworn testimony of any witness;

   (2) the exhibits which have been received into evidence; and

   (3) any facts to which the lawyers have agreed.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

3

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they will say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some testimony and exhibits may be received only for a limited purpose; if I give a limiting instruction, you must follow it.

(4) Anything you see or hear when the Court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

4

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicts the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

5

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion and all the other evidence in the case.

OVERVIEW OF APPLICABLE LAW - CIVIL RIGHTS CLAIM

Dr. Peña brings his claim under the federal civil rights statute, which provides that any person who, under color of law, deprives another of any rights secured by the Constitution of the United States shall be liable to the injured party.

CIVIL RIGHTS CLAIM - ELEMENTS AND BURDEN OF PROOF

In order to prevail on his civil rights claim against Dr. Bjorndal, Dr. Peña must prove each of the following elements by a preponderance of the evidence:

(1) Dr. Bjorndal acted under color of law; and

(2) Dr. Bjorndal's acts deprived Dr. Peña of a right he has under the United States Constitution.

A person acts "under color of law" when the person acts in the performance of official duties under law. The parties have agreed that Dr. Bjorndal acted under color of law.

6

CONSTITUTIONAL RIGHT: FIRST AMENDMENT FREEDOM OF SPEECH

The constitutional right that Dr. Peña alleges Dr. Bjorndal deprived him of is his right to freedom of speech under the First Amendment to the Constitution. The right to free speech includes the right to expressive conduct. Dr. Peña claims that his protected speech was the lawsuit he had previously filed against other employees of the Sonoma Developmental Center, his photography of patients' injuries, communications with Contreras and his complaint to the California Department of Health about the removal of patient photographs from files at Sonoma Developmental Center.

The lawsuit, photography, communications with Contreras and complaint constitute speech because they demonstrate Dr. Peña's intent to convey particular messages. The right to free speech includes the right not be retaliated against for engaging in expressive conduct. Retaliation can take the form of an adverse employment action taken against an employee. Dr. Peña claims that Dr. Bjorndal retaliated against him for his expressive conduct when she terminated his employment at the Sonoma Developmental Center.

In order to prove Dr. Bjorndal deprived him of his First Amendment rights, Dr. Peña must prove the following by a preponderance of the evidence:

(1) Dr. Bjorndal took an adverse employment action against Dr. Peña; and

(2) Dr. Peña engaged in protected speech or expressive conduct, which was a substantial or motivating factor for the adverse employment action.

7

The parties have agreed that Dr. Bjorndal terminated Dr. Pena's employment, and that termination is an adverse action.

## SUBSTANTIAL OR MOTIVATING FACTOR

A substantial or motivating factor is a significant factor.

In order for protected speech to be a substantial or motivating factor for an employment decision, the defendant, of course, must be aware of the speech. Here, Dr. Bjorndal cannot be held liable for taking adverse action against Dr. Peña because of his protected speech unless Dr. Peña proves by a preponderance of the evidence that Dr. Bjorndal was aware of that speech. Dr. Bjorndal denies that she was aware of his earlier lawsuit against other employees, communications with Contreras and his complaint to the California Department of Health.

A jury may consider a number of factors in determining if retaliation was a substantial or motivating factor behind a defendant's adverse employment actions. These include the following.

First, a plaintiff can introduce evidence regarding the proximity in time between the protected speech and the allegedly retaliatory employment decision, from which a jury logically could infer that the plaintiff was terminated in retaliation for his speech.

Second, a plaintiff can introduce evidence that the defendant expressed opposition to his speech, either to him or to others.

Third, a plaintiff can introduce evidence that the defendant's proffered explanations for the adverse employment action were false and pretextual. A reasonable fact finder could

8

1  also find that a pretextual explanation casts doubt on other
2  explanations that, standing alone, might appear to be true.

### DR. BJORNDAL'S DEFENSE

4  Dr. Bjorndal claims that she did not terminate Dr. Peña
5  because of his prior lawsuit against other employees, his
6  photography, communication with Contreras or his complaint to the
7  California Department of Health.  As noted above, she claims she
8  did not know about the lawsuit or the complaints.  She claims,
9  instead, that she terminated him because of his misconduct with
10 regard to a DNR order that he issued for a patient.

11  The patient who was the subject of the DNR order will be
12 referred to as Elizabeth R.  She was an elderly, developmentally
13 disabled patient at the Sonoma Developmental Center who was
14 suffering from renal failure, that is, kidney failure.  Dr. Peña
15 wrote a DNR Order for Elizabeth R. on March 3, 2001, and Dr.
16 Bjorndal reversed the order.  Developmentally disabled persons
17 residing in a state hospital have the right to give or withhold
18 consent for treatments and procedures, unless a judicial order or
19 other law provides for another person to make these decisions for
20 the patient.  The parties dispute what Elizabeth R.'s wishes were.

21  However, this is not a wrongful termination lawsuit.  You
22 will not be asked to determine whether or not the reasons Dr.
23 Bjorndal has given for firing Dr. Peña would be fair reasons for
24 firing him.  Likewise, you will not be asked to decide how the
25 end-of-life care for Elizabeth R. should have been managed, or
26 whether cardiopulmonary resuscitation (CPR) or a DNR Order was the
27 correct approach for this patient from a medical perspective.  You
28

9

will not be asked to determine the wisdom of medical decisions that were made for this patient.

Similarly, you will not be asked to decide the merit of Dr. Peña's prior lawsuit. The outcome of that lawsuit is not relevant to this trial. You should not speculate about the results of that lawsuit. Nor will you be asked to decide whether the photographs of patients should or should not be taken and kept in patients' files.

Instead, you will be asked to decide whether Dr. Bjorndal fired Dr. Peña for non-retaliatory reasons, or whether her true motivation was to retaliate against Dr. Peña for engaging in certain conduct that may be protected by the First Amendment, such as filing a previous lawsuit, photography, communication with Contreras and a complaint to the California Department of Health.

PUBLIC EMPLOYEES' QUALIFIED FREE SPEECH RIGHTS

Under the First Amendment, a public employee like Dr. Peña has free speech rights, but his rights are limited. He has a right to speak as a citizen on matters of public concern. As an employee, however, his speech and conduct in connection with his official duties can be regulated by his employer. To recover for an adverse employment action based on expressive conduct related to his employment, Dr. Peña must prove that:

(1) Dr. Peña acted as a citizen and not as part of his official duties; and

(2) his action was on a matter of public concern.

Dr. Peña's prior lawsuit was expressive conduct taken as a citizen on a matter of public concern. However, it is for you to decide if Dr. Peña acted as a citizen, not as part of his official

10

duties, when he made his complaint to the California Department of Health, when and if he complained to Contreras, and when he took photographs of patients.  In other words, you must decide whether taking photographs, communicating with Contreras and making the complaint to the California Department of Health were done as a citizen or were done as part of his official duties.

Every physician employed by the Department of Developmental Services at the Sonoma Developmental Center is under a legal duty to report any patient abuse, including medical malpractice. However, photography, communication with Contreras and the complaint to the Department of Health Services were not necessarily done as part of his official duties simply because they may have taken place at his workplace or because they concerned the subject matter of his employment.  If Dr. Peña acted in direct contravention of a supervisor's orders, that fact could weigh in favor of finding that he was not acting within the scope of his professional responsibilities.

## DEFENDANT'S MIXED MOTIVE DEFENSE

Even if Dr. Peña proves each element of his claim that he was retaliated against for engaging in protected speech under the First Amendment, Dr. Bjorndal can escape liability by proving by a preponderance of the evidence that

(1)  she had a non-retaliatory reason for taking the adverse action and

(2)  it is more likely than not that she would have taken the same adverse action for the non-retaliatory reason in the absence of the protected speech.

11

Dr. Bjorndal contends that, regardless of Dr. Peña's complaint to the Department of Health Services, his photography, communication with Contreras or his earlier lawsuit, she would have terminated his employment anyway because she believed that he engaged in misconduct when he wrote the DNR order for Elizabeth R., failed to inform Dr. Bjorndal of the circumstances and was dishonest in the ensuing investigation. As noted previously, Dr. Bjorndal has the burden of proof concerning this affirmative defense.

## DAMAGES – PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Dr. Peña, you must determine his damages. He has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate him for any injury you find was caused by Dr. Bjorndal. You should consider the following: the loss of enjoyment of life experienced; the mental pain and suffering experienced and which with reasonable probability will be experienced in the future; the reasonable value of earnings lost to the present time; and the reasonable value of earnings which with reasonable probability will be lost in the future. It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

12

DAMAGES - MITIGATION

Dr. Peña has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Dr. Bjorndal has the burden of proving by a preponderance of the evidence:

(1) that Dr. Peña failed to use reasonable efforts to mitigate damages; and

(2) the amount by which damages would have been mitigated.

DAMAGES ARISING IN THE FUTURE - DISCOUNT TO PRESENT CASH VALUE

Any award for future economic damages must be for the present cash value of those damages. Non-economic damages, such as pain and suffering, are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred.

CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else. You may not discuss the case on the internet. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or anything on the internet about the case or about anyone who has anything to do with it;

13

Third, do not do any research, such as consulting dictionaries, searching the internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

### NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

### TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. They will be destroyed at the conclusion of the case.

14

1    Whether or not you take notes, you should rely on your own
2 memory of the evidence.  Notes are only to assist your memory.
3 You should not be overly influenced by your notes or those of your
4 fellow jurors.

QUESTIONS TO WITNESSES BY JURORS

6    You may propose written questions to witnesses.  You may
7 propose questions in order to clarify the testimony, but you are
8 not to express any opinion about the testimony or argue with a
9 witness.  If you propose any questions, remember that your role is
10 that of a neutral fact finder, not an advocate.

11   If you wish to ask a question, you may write out your
12 question on a form provided by the court.  Do not sign the
13 question.  Give it to the courtroom deputy clerk during one of
14 your breaks.  I will review the question with the attorneys to
15 determine if it is legally proper.

16   There are some proposed questions that I will not permit, or
17 will not ask in the wording you submit.  This might happen either
18 due to the rules of evidence or other legal reasons, or because
19 the question is expected to be answered later in the case.  If I
20 do not ask a proposed question, or if I rephrase it, do not
21 speculate as to the reasons.  Do not give undue weight to
22 questions you or other jurors propose.  You should evaluate the
23 answers to those questions in the same manner as you evaluate all
24 of the other evidence.

25   By giving you the opportunity to propose questions, I am not
26 requesting or suggesting that you do so.  It will often be the
27 case that a lawyer has not asked a question because it is legally

15

objectionable or because a later witness may be addressing that subject.

## OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

After opening statements, Dr. Peña will present evidence. After Dr. Peña's counsel questions a witness, Dr. Bjorndal's counsel may cross-examine the witness. During Dr. Peña's presentation of evidence, the Court may, for efficiency reasons, require Dr. Bjorndal's counsel to conduct his examination of the witness following Dr. Peña's examination. When Dr. Peña has concluded his presentation of evidence, Dr. Bjorndal may present additional evidence, and Dr. Peña's counsel may cross-examine. After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments. After that, you will go to the jury room to deliberate on your verdict. After you have reached your verdict, you will be excused.

IT IS SO ORDERED.

Dated: _____
CLAUDIA WILKEN
United States District Judge

16