IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAN A. PENA, | No. C 00-4009 CW |
| Plaintiff, | ORDER DENYING DEFENDANT JUDITH BJORNDAL'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL |
| v. | |
| TIMOTHY MEEKER, PATRICIA REES, HAL PETERSON, JENNIFER WEAR, DENISE SHELDON, CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES (DDS), JUDITH BJORNDAL and NORM KRAMER, | |
| Defendants. | |

Defendant Judith Bjorndal[1] renews her motion for judgment as a matter of law (JMOL) and moves for a new trial. Plaintiff Van A. Pena opposes both motions. For the reasons set forth below, the Court denies both motions.

BACKGROUND

Plaintiff was formerly employed as a physician at the Sonoma County Development Center (SDC), a public hospital for patients with developmental disabilities. In this action, he alleges that Defendant terminated his employment at SDC in retaliation for engaging in protected free-speech activity, including: (1) filing a lawsuit alleging that he was terminated for speaking out about patient abuse and malpractice at SDC; (2) photographing patient injuries to document such abuse and malpractice; (3) filing a complaint with the California Department of Health Services (CDHS)

---

[1] Plaintiff previously settled his claims against all other Defendants in this case.

United States District Court
For the Northern District of California

alleging that photographs documenting patient injuries were being improperly removed from patient files; and (4) complaining to SDC Police Chief Ed Contreras.

The Court held a ten-day jury trial in November 2013.  On November 18, 2013, the jury returned a verdict in favor of Plaintiff.  Docket No. 403.  Specifically, the jury found that Plaintiff's original lawsuit,[2] photography of patient injuries, and complaint to CDHS were all substantial or motivating factors in Defendant's decision to terminate his employment, but that his complaints to Chief Contreras were not substantial or motivating factors in the decision.  The jury also found that Plaintiff's photography of patient injuries and complaint to CDHS fell outside the scope of his official duties at SDC.  Finally, the jury rejected Defendant's affirmative defense that she would have terminated Plaintiff's employment even if he had not engaged in protected free-speech activities.  Based on these findings, the jury awarded Plaintiff just over $1.3 million in damages.  This award consisted of $51,942 in past earnings, $791,434 in future earnings (reduced to present value), and $500,000 in emotional distress damages.

The clerk entered judgment against Defendant, Docket No. 410, and Defendant filed her motions for JMOL and new trial.

---

[2] This lawsuit was originally filed on October 31, 2000.  In the original complaint, Plaintiff alleged that Defendants Timothy Meeker, Patricia Rees, Hal Peterson, Jennifer Wear, Denise Sheldon and the California Department of Developmental Services retaliated against him for reporting patient abuse and gross negligence.  The lawsuit was filed before Defendant Bjorndal began working at SDC and before Plaintiff was terminated.

United States District Court
For the Northern District of California

LEGAL STANDARDS

I.   Motion for JMOL

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence.  Fed. R. Civ. P. 50(b).  Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict.  Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006).  Where there is sufficient conflicting evidence, or where reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper.  See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).

II.  Motion for New Trial

A new trial may be granted if the verdict is not supported by the evidence.  There is no easily articulated formula for passing on such motions.  Perhaps the best that can be said is that the Court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Landes Constr., Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

The Ninth Circuit has found that the existence of substantial evidence does not prevent the court from granting a new trial if the verdict is against the clear weight of the evidence.  Landes,

833 F.2d at 1371.  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  Id. Therefore, the standard for evaluating the sufficiency of the evidence is less stringent than that governing the Rule 50(b) motions for judgment as a matter of law after the verdict.

DISCUSSION

I.   Motion for JMOL

Defendant moves for JMOL on the grounds that several of the jury's special verdict findings were made without sufficient evidentiary support in the record.  In particular, Defendant contends that the following jury findings were not supported by the evidence: that Plaintiff's photography of SDC patient injuries fell outside the scope of his employment duties; that Plaintiff's lawsuit, CDHS complaint, and photography of patients were substantial or motivating factors in the decision to terminate his employment; and that Defendant would not have terminated Plaintiff's employment had he not engaged in protected activity. She also argues that, even if Plaintiff's photography was a substantial or motivating factor in her termination decision, she is entitled to qualified immunity for that decision.  Each of these assertions is addressed briefly below.

A.   Scope of Plaintiff's Employment

In Garcetti v. Ceballos, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  547 U.S. 410, 421

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(2006).  The Court reasoned, "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created."  Id. at 421-22.  Here, Defendant contends that Plaintiff failed to present sufficient evidence at trial to support the jury's finding that his photography of patient injuries fell outside the scope of his official job duties.

This argument is not persuasive.  Former SDC executive director Timothy Meeker expressly testified that, during the relevant time period, the hospital never had a policy that required physicians to photograph suspected patient abuse.  Trial Tr. 423:17-424:10.  This evidence is sufficient to support the jury's finding on this issue.  Although Meeker also testified that SDC physicians were permitted to photograph patient injuries of unknown origin, id. 369:15-370:1, the jury could have reasonably concluded that this testimony was consistent with Meeker's testimony that physicians were not required to photograph patient abuse.

Defendant asserts that Plaintiff's photography of patients must have fallen within the scope of his employment responsibilities because he would not have been able to take those photographs if he were a member of the public and not employed by SDC.  This argument is not supported by the case law.  The Ninth Circuit has held that when a public employee reports misconduct by a superior or "speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's

professional duties." <u>Dahlia v. Rodriguez</u>, 735 F.3d 1060, 1075 (9th Cir. 2013) (en banc), <u>cert.</u> <u>denied</u>, 134 S. Ct. 1283 (2014). Even when a public employee is required to report such misconduct, he or she still enjoys First Amendment protection for taking steps to report that misconduct which go beyond his or her ordinary and expected reporting duties.  As the Ninth Circuit has explained, "if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct, e.g., when the employee works for Internal Affairs or another such watchdog unit."  <u>Id.</u> at 1075.  The evidence does not suggest that Plaintiff had any affirmative duties to investigate misconduct here, let alone to provide photographs of any alleged misconduct to lawmakers or the press.  <u>See</u> Trial Tr. 986:9-:14, 892:1-:4 (stating that Plaintiff shared photographs with the SDC police chief "so he could forward them to the legislature and the local newspaper").

Furthermore, the fact that Plaintiff only learned of the alleged misconduct by virtue of his employment at SDC and that members of the public would not have had the same access to SDC patients does not mean that his photography of patients necessarily fell within the scope of his employment.  Numerous cases have recognized that a public employee's reports of misconduct may be protected by the First Amendment even if the employee learned of the misconduct by virtue of his or her specific employment position.  <u>See, e.g.</u>, <u>Marable v. Nitchman</u>, 511

F.3d 924, 933 (9th Cir. 2007) (holding that a state transportation agency engineer's "complaints concerning his superiors allegedly corrupt overpayment schemes were not in any way a part of his official job duties"); Freitag v. California Dep't of Corr., 289 Fed. App'x 146, 147 (9th Cir. 2008) (affirming district court order finding that a guard at a maximum security prison who reported misconduct to a state correctional agency was acting outside the scope of her official job duties). Accordingly, Defendant is not entitled to JMOL on this basis.

B.   Substantial or Motivating Factors in Defendant's Termination Decision

Defendant challenges the jury's findings that Plaintiff's lawsuit, CDHS complaint, and photography of patients were substantial or motivating factors in her decision to terminate his employment. Each of these findings is addressed separately below.

1.   Lawsuit

Defendant contends that the evidence presented at trial is not sufficient to show that she was even aware of Plaintiff's lawsuit prior to his termination. Thus, she contends, Plaintiff's lawsuit could not have been a substantial or motivating factor in her decision to terminate his employment.

The only direct evidence in the trial record that Defendant knew of Plaintiff's lawsuit is a letter which Plaintiff allegedly wrote to her in November 2000. Plaintiff testified that he drafted the letter in response to a memo Defendant had written in October 2000 and that he personally delivered the letter to Defendant in her office. Trial Tr. 845:12-:22. According to Plaintiff, the letter contained information about the lawsuit he

7

had previously filed against Defendant's friends and superiors at SDC. Id. Although Plaintiff failed to produce a copy of the letter at trial, he did produce a document which he claims was a "hand-written rough draft" of the letter. Id. 845:18-:25. Defendant denies that she ever received a copy of the letter or any other information about the lawsuit. Id. 1019:15-:18.

While Defendant attacks the credibility of Plaintiff's testimony and the authenticity of the hand-written draft of the letter that he produced, she has not shown that no reasonable jury would credit Plaintiff's testimony and evidence. Nor has she shown that the elapsed time between Plaintiff's delivery of this letter and Defendant's adverse employment action -- about eight months -- was so long as to preclude an inference of retaliatory motive. Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) ("The elapsed times between the protected speech and the adverse actions were eight months, three months, and five months, respectively. We hold that the magistrate judge erred in holding that time periods of between three and eight months were too long, without regard to other circumstances, to support an inference of retaliation."); Allen v. Iranon, 283 F.3d 1070, 1078 (9th Cir. 2002) ("[A]n eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory.").

Moreover, as the Ninth Circuit explained when reversing this Court's exclusion of SDC Police Chief Ed Contreras's testimony from an earlier trial in this case,

> Because a retaliation suit requires a showing of an
> employer's improper motive and an employer's true
> motivations are particularly difficult to ascertain,

United States District Court
For the Northern District of California

> retaliation cases often turn upon circumstantial
> evidence.  Here, the fact that SDC leaders, including
> Bjorndal's direct superior, desired Pena's termination
> so strongly that they were willing to engage the SDC
> Police Chief in a cloak-and-dagger investigation of Pena
> would allow a jury to infer that those leaders would
> have communicated that desire to Bjorndal.

Pena v. Meeker, 435 Fed. App'x 602, 604 (9th Cir. 2011) (internal

citations and quotation marks omitted).  This same evidence allows

a jury to infer that SDC leaders would have informed Bjorndal of

the lawsuit.

Accordingly, Plaintiff's evidence is sufficient to support

the jury's finding on this issue.

2.   CDHS Complaint

Defendant contends that the trial record lacks sufficient

evidence to show that she knew of Plaintiff's CDHS complaint

against SDC before Plaintiff's employment was terminated.  She

argues that she had no way of knowing that he had filed such a

complaint because he never mentioned that he had done so and

because CDHS protects the identity of its complainants.

Plaintiff contends that Defendant knew he filed a CDHS

complaint against SDC, citing evidence that Defendant met with him

less than a week after CDHS validated his complaint to discuss the

subject matter of the complaint -- specifically, his practice of

photographing certain patient injuries.  See Trial Tr. 606:2-:12,

Ex. 14.  Moreover, on the date that CDHS validated Plaintiff's

complaint, the Executive Director issued a directive "regarding

the removal of material, including photographs from the clinical

record."  Ex. 14.  Plaintiff also highlights evidence that SDC's

executive team, including Defendant, met that same week to discuss

the CDHS complaint and expressed concern that Plaintiff was

photographing patients.  Id. 1031:15-:20.  Defendant herself testified that she was afraid a "big deal" was being made about the fact that Plaintiff was taking photographs of patients and putting them in their records.

Construed in a light favorable to Plaintiff, this evidence is sufficient to support an inference that Defendant knew Plaintiff filed the CDHS complaint and sought to take adverse action against him in retaliation.  As the Ninth Circuit explained after considering this same evidence in an appeal from a summary judgment order in this case,

> That SDC supervisory personnel viewed Pena as a troublesome whistleblower and that his taking of patient photographs was raised at both an executive committee meeting and in a meeting between Bjorndal and Pena only one week after the SDC had been compelled by DHS to implement a Plan of Correction on the subject of patient photographs provides strong circumstantial evidence from which <u>a reasonable factfinder could infer that SDC leadership, including Bjorndal, suspected Pena of having filed the DHS complaint and retaliated against him on that basis</u>.

Pena, 435 Fed. App'x at 604 (emphasis added).  Thus, Plaintiff's evidence is sufficient to support the jury's finding on this issue.

     3.   Photography of Patients

Defendant contends that Plaintiff's photography of patients was not a substantial or motivating factor in her decision to terminate his employment.  She concedes that she failed to challenge this finding in her pre-verdict Rule 50(a) motion for JMOL.  Accordingly, this finding may only be reviewed for plain error.  EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th

United States District Court
For the Northern District of California

Cir. 2009) ("[I]n ruling on a Rule 50(b) motion based on grounds not previously asserted in a Rule 50(a) motion, 'we are limited to reviewing the jury's verdict for plain error, and should reverse only if such plain error would result in a manifest miscarriage of justice.'" (citations omitted)).  The Ninth Circuit has warned that this is an "'extraordinarily deferential'" standard and "'is limited to whether there was <u>any</u> evidence to support the jury's verdict.'"  <u>Id.</u> at 962 (citations omitted; emphasis in original).

Here, Plaintiff presented evidence to support the jury's finding that Defendant's termination decision was motivated at least in part by his photography.  Specifically, Plaintiff testified that he and Defendant had a meeting in which she specifically told him to stop taking photographs.  Trial Tr. 606:2-:12.  He also solicited testimony from Defendant that she knew about the photographs, asked him to stop taking further photographs, and "was afraid that [] other administrators were going to make a big deal about what I assumed was one of my physicians taking photographs [without patient consent]."  Trial Tr. 981:25-982:18, 1037:15-:18, 1038:3-:12.  Although this evidence is circumstantial, it is nevertheless sufficient to support the jury's finding, particularly under the plain error standard.

    C.   Affirmative Defense Based on Defendant's Other Asserted Grounds for Termination Decision

Defendant contends that the evidence presented at trial supported her affirmative defense that she would have terminated Plaintiff's employment regardless of whether or not he engaged in protected activity.  Because she acknowledges that she failed to

11

United States District Court
For the Northern District of California

raise this argument in her pre-verdict Rule 50(a) motion, the Court may only review the jury's finding on this issue for plain error.  Once again, this standard is "'extraordinarily deferential.'"  Go Daddy Software, Inc., 581 F.3d at 962 (citations omitted).  Furthermore, given that this is an affirmative defense, Defendant bears the ultimate burden of proof on this issue.  While Defendant presented some evidence at trial to show that she terminated Plaintiff based on his decision to issue a "Do Not Resuscitate" (DNR) order in March 2001, this evidence was not sufficient to preclude a reasonable jury from finding that she failed to prove this fact by a preponderance of the evidence.  Accordingly, she is not entitled to JMOL on the basis of her affirmative defense.

D.   Qualified Immunity for Termination Based on Plaintiff's Photography

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011).  Here, Defendant asserts that she is shielded by qualified immunity because "no physician enjoys a clearly established constitutional right to photograph their patients such that a supervisor admonishing him to not take such photos without consent would reasonably anticipate that her instruction impinged on the physician's First Amendment rights."  Docket No. 414, Def.'s Mot. JMOL, at 4.  This argument mischaracterizes the First Amendment right that Defendant is accused of violating.

Plaintiff does not assert that Defendant violated his right to photograph SDC patients without their consent; rather, as noted above, he asserts that she violated his right to document patient abuse and malpractice at a public hospital.  This right is clearly established under existing case law.  See Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 978-79 (9th Cir. 2002) ("Thus, public employee speech is protected when it . . . highlights inappropriate standards affecting patient care at a public hospital." (citations omitted)).  Defendant cannot gain the benefits of qualified immunity by simply redefining or narrowing the First Amendment right Plaintiff has asserted.  Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995) (noting that, in determining whether a right is "clearly established," a court must not define the right so narrowly as "to define away all potential claims").

Furthermore, regardless of whether or not Defendant actually believed that Plaintiff was photographing patients unjustifiably without their consent, the Court cannot assume, in light of the evidence presented at trial, she would have terminated his employment for this reason alone.  As previously discussed, Plaintiff offered sufficient evidence to support a finding that he was terminated specifically for photographing patient abuse and malpractice and not merely for photographing patients without their consent.  Thus, Defendant is not entitled to qualified immunity on this claim.

II.  Motion for New Trial

Defendant moves for a new trial on the following grounds: the jury's special verdict findings were against the clear weight of the evidence; Defendant was prejudiced by the Court's refusal to

instruct or allow questioning based on the term "professional responsibilities"; the admission of certain purportedly inflammatory and prejudicial evidence; Plaintiff's distortion of damages evidence regarding his post-termination work experience; the jury's purportedly excessive damages award; the Court's questions of Defendant; and the admission of irrelevant evidence regarding a hospital patient Plaintiff treated.   Each of these grounds is addressed below.

   A. Jury's Special Verdict Findings

  Defendant's arguments that the jury's findings are against the clear weight of the evidence fail for the same reasons her motion for JMOL fails.   Although the standard under Rule 59 is slightly different from the standard under Rule 50(b), Plaintiff presented sufficient evidence -- much of which is discussed above -- to support the jury's verdict under either standard.

   B. The Court's Refusal to Instruct or Allow Questioning on
     Garcetti's "Professional Responsibilities"

  As noted above, the Supreme Court held in Garcetti that the First Amendment does not "protect[] a government employee from discipline based on speech made pursuant to the employee's official duties."   547 U.S. at 413.   Relying on Garcetti, this Court gave the following instruction to the jury in this case: "To recover for an adverse employment action based on expressive conduct related to his employment, [Plaintiff] must prove that, number one, [he] acted as a citizen and not as a part of his

official duties and, number two, his action was on a matter of public concern." Trial Tr. 177:8-:12.[3]

Defendant contends that the Court erred by failing to add the term "professional responsibilities" to this instruction, as she requested on the first day of trial. <u>See</u> Trial Tr. 136:19-147:19. She argues that she was prejudiced by the omission of this term from the jury instructions.[4] According to Defendant, the term "professional responsibilities" is more expansive than the term "official duties" because it encompasses work that is not explicitly required by an employer but, rather, "involves the use of discretion, the exercise of judgment, and the weighing of alternative courses of action." Docket No. 416, Def.'s Mot. New Trial, at 8.

Although <u>Garcetti</u> uses both terms, it does not appear to draw any distinction between them. The only time the <u>Garcetti</u> Court used the term, "professional responsibilities," was in the context of "official duties." The <u>Garcetti</u> Court stated, "The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public

---

[3] The Court used similar language throughout the jury instructions. <u>See, e.g.</u>, Trial Tr. 177:15-:16 ("[I]t is for you to decide whether [Plaintiff] acted as a citizen, not as part of his official duties" when he engaged in certain alleged conduct.").

[4] Defendant also argues that she was prejudiced by the Court's refusal to allow her to use the term "professional responsibility" to question witnesses about the responsibilities of SDC staff members. However, Defendant's only citation to the record in support of this argument is an instance in which the Court sustained an objection to questioning regarding the "professional responsibilities" of a staff member who was not a doctor. The basis of the objection was that the staff member's responsibilities were not the same as Plaintiff's. <u>See</u> Trial Tr. 399:19-400:16.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." 547 U.S. at 421-22.  This language suggests that the Court was using the term "professional responsibilities" as a synonym for "official duties."  Moreover, the majority in <u>Garcetti</u> used the term "official duties" four times and used the term "professional responsibilities" only once.  The Court also used the hybrid terms "professional duties" twice and "official responsibilities" twice, further suggesting that the Court viewed these words and terms as largely interchangeable.[5]  Courts in this circuit, likewise, do not seem to distinguish between the two terms.  <u>See, e.g.</u>, <u>Dahlia</u>, 753 F.3d at 1077 ("It is possible that Dahlia's professional duties required him to meet with IA at IA's insistence, but it is also plausible that Dahlia's act of meeting with IA was outside his job duties for the purpose of the First Amendment.").  Thus, Defendant was not prejudiced by the use of the term "official duties" rather than "professional responsibilities" in the jury instructions.

    C.   Admission of Purportedly Inflammatory Evidence

    Defendant contends that Plaintiff was permitted to introduce certain irrelevant and prejudicial evidence regarding his lawsuit and the alleged misconduct of several members of SDC's managerial staff other than Defendant.  She asserts that this evidence was

---

    [5] Justice Breyer noted in his dissent that certain forms of professional speech, such as speech by lawyers, are "subject to independent regulation by canons of the profession."  547 U.S. at 446 (Breyer, J., dissenting).  But he argued that these forms of speech are entitled to <u>greater</u> First Amendment protection -- not lesser protection -- so, to the extent he believes there is a difference between "official duties" and "professional responsibilities," his views cut against Defendant's position here.

introduced in order to "create prejudice in the jury against SDC administrators by showing repeated, baseless investigations of [Plaintiff] and to create an atmosphere of impropriety, negligence, abuse and cover-up that would taint [Defendant] simply because she was also in management."  Def.'s Mot. New Trial at 11.

Defendant cites various excerpts from the testimony of Meeker, Contreras and Jennifer Wear, another SDC administrator, as examples of inflammatory evidence.  Although much of this testimony involved incidents of misconduct in which Defendant herself never participated, these incidents were nevertheless relevant to Plaintiff's underlying retaliation claim because he complained about them to other SDC staff members or police.  As such, the testimony about these incidents was relevant to show that Plaintiff had a reputation among SDC managers as a whistleblower at SDC.  The Ninth Circuit previously held that this type of reputational evidence in this case was relevant.  <u>Pena</u>, 435 Fed. App'x at 603 ("Pena presented evidence in opposition to Bjorndal's motion for summary judgment indicating that he had a reputation among his superiors at SDC, including Meeker, as a repeat whistleblower whose complaints of patient mistreatment threatened to subject SDC to legal liability.")

What's more, the Court took steps to limit whatever prejudicial effects this testimony might have.  For instance, when Meeker was testifying about the incident involving the rape of an SDC patient -- an event for which Plaintiff filed the incident report -- the Court repeatedly cautioned Plaintiff's counsel not to discuss events that did not directly involve Plaintiff.  Trial Tr. 352:23-256:3.  In fact, the Court specifically ended this line

United States District Court
For the Northern District of California

of questioning once it began to touch on subjects unrelated to Plaintiff's reporting of the incident.  Id. 356:1-:3.

Plaintiff also notes that Defendant failed to object to much of this testimony at trial.  While this failure does not, as Plaintiff argues,[6] constitute a waiver of these arguments for the purposes of moving for a new trial, Defendant's failure to object does counsel against finding that "a mistake has been committed" at trial.  Landes Constr., 833 F.2d at 1371-72.

Accordingly, in light of the probative value of the challenged evidence, the Court's efforts to minimize whatever prejudice it might cause, and Defendant's failure to object to some of it at trial, Defendant is not entitled to a new trial on this ground.

D.   Plaintiff's Alleged Distortion of Damages Evidence

Defendant argues that she was prejudiced by the testimony of Plaintiff and his wife regarding his post-termination emotional distress and the exclusion of other evidence regarding his subsequent termination from another job.  Specifically, she argues that Plaintiff's testimony was misleading because he stated that he was terminated because he took time off to care for his wife following surgery.  Defendant argues that she should have been permitted to present testimony from Plaintiff's supervisor, indicating that he was terminated because he prescribed narcotic

_____

[6] The case Plaintiff cites to argue that Defendant waived these arguments is inapposite because it addresses the waiver of certain evidentiary objections on appeal that were never raised at trial.  Price v. Kramer, 200 F.3d 1237, 1251 (9th Cir. 2000).  The case does not preclude a litigant from raising arguments in a motion for new trial based on the admission of evidence to which the litigant failed previously to object.

1   medication for one patient but gave it to another patient.

2   Defendant further argues that the testimony of Plaintiff's wife

3   was misleading because it failed to distinguish between the

4   emotional distress caused by Plaintiff's termination from SDC and

5   the emotional distress he suffered as a result of his termination

6   from another position six years later.

7        However, the Court excluded the testimony of the supervisor

8   after Plaintiff offered to limit his damages for emotional

9   distress to those incurred prior to January 1, 2007.  Based on

10  Plaintiff's agreement to do so, the Court found that testimony

11  from the supervisor would be more prejudicial than probative.

12  Moreover, the Court instructed the jury that it could only

13  consider damages for emotional distress suffered from March 5,

14  2001 until January 1, 2007.  The jury awarded approximately sixty

15  percent of the emotional distress damages Plaintiff requested.

16       The Court further notes that Defendant's counsel stated that,

17  if Plaintiff would stipulate that he was terminated and that

18  damages for emotional distress would be cut off as of the date of

19  his termination, "we don't need this witness," referring to the

20  supervisor.  Trial Tr. 1049:1-6.  Moreover, Defendant asked the

21  Court to strike Plaintiff's testimony regarding the reason for his

22  2007 termination if it was going to exclude the testimony of the

23  former supervisor.  The Court agreed to do so "but in a more

24  neutral way" by instructing the jury that it "shouldn't take into

25  account any events that occurred after 2007" and advised that

26  Defendant's counsel could write the instruction.  Id. 1058:18-22.

27  Although Defendant argues that the jury's damage award was based

28  on a misunderstanding of the emotional distress evidence, she has

19

not presented any compelling reasons to believe that this is the case.  Thus, this does not provide grounds for a new trial.

E.   Damage Award and Mitigation Evidence

Defendant contends that the jury's economic damage award is not supported by the evidence because it does not properly account for Plaintiff's failure to mitigate his losses after his employment at SDC was terminated.

"Reasonable jurors need not accept the views of one side's expert or the other's, but may make their own reasonable judgment on the evidence, accepting part, all, or none of any witness's testimony." In re Exxon Valdez, 270 F.3d 1215, 1248 (9th Cir. 2001).  When a jury awards the exact amount of damages proposed by one party's expert, it "is reasonable to infer that the damages award properly resulted from basic calculations based on evidence in the record." Melbye v. Accelerated Payment Technologies, Inc., 2012 WL 5944644, at *6 (S.D. Cal.) (denying Rule 59 motion for new trial where it was obvious that the jury's damage award was derived from evidence in the record).

As Plaintiff points out, the jury awarded him the exact amount of economic damages that his expert testified he should receive.  See Trial Tr. 1279:1-8, 1290:13.  Plaintiff's expert used the actual amount of Plaintiff's post-termination earnings to determine how much Plaintiff mitigated his losses, rather than relying on the more in-depth labor market analysis that Defendant's expert used.  This decision was reasonable in light of Plaintiff's testimony about his efforts to mitigate his losses.  A jury could have reasonably concluded that Plaintiff made every realistic effort to obtain new full-time employment after he was

dismissed from SDC and, thus, that Plaintiff's expert's methodology was reliable.  Thus, the jury's decision to credit the damages estimate of Plaintiff's expert -- and to reject the estimate of Defendant's expert -- was reasonably supported by the evidence.

  F.   The Court's Questioning of Defendant

  Defendant testified that she met with Plaintiff for the first time on October 25, 2000, shortly after she arrived at SDC.  She said that at the meeting she told Plaintiff that she "didn't want to be concerned about any events.  I didn't even want to hear about them.  I didn't know about them.  I don't want to hear about them, any events before I was there."  Trial Tr. 978:4-:7.  Pressing her to explain the conversation, the Court told her that it seemed "sort of odd . . . doesn't seem to be a normal thing that you would say to somebody when you first met them . . . It sort of says, What past events?"  Id. 979:24-980:3.  Defendant reiterated that she had not identified any events and that Plaintiff had not inquired.  Defendant contends that this exchange was prejudicial.

  The Court's inquiry of Defendant does not provide grounds for granting a new trial.  The Court's questions were intended to clarify Defendant's testimony and were similar to clarifying questions that the Court asked other witnesses, including Plaintiff's witnesses.  See, e.g., id. 319:9-321:11 (questioning Contreras); 326:2-23 (same).  Furthermore, to the extent that any of the Court's questions were prejudicial, that prejudice was minimal and cured by jury instructions directing the jurors to

**United States District Court**
For the Northern District of California

make all credibility determinations independently based on their own views of the evidence.

G.   Admission of Irrelevant Evidence

Defendant asserts that she was prejudiced by the admission of a Psychiatric Consultation Report (entered into evidence as Exhibit 22), a Nursing Admission Note (Exhibit 24), and a Discharge Note (Exhibit 27) regarding Elizabeth R., the patient for whom Plaintiff issued the DNR order in March 2001.  Defendant argues that this evidence was both irrelevant and prejudicial because it suggested that Elizabeth R. lacked the capacity to give informed consent for CPR.

Elizabeth R.'s capacity to give informed consent to CPR was directly relevant to Defendant's affirmative defense.  Defendant argued that Plaintiff's employment would have been terminated based on his treatment of Elizabeth R., regardless of whether he engaged in any protected activity.  This defense placed in issue Elizabeth R.'s capacity to object to Plaintiff's decision to issue a DNR order.

Furthermore, the exhibits Defendant challenges focused on the capacity of an SDC patient to give informed consent to certain procedures; they did not discuss the conduct or competence of any SDC administrators.  As such, these exhibits were not unduly prejudicial towards Defendant.  Given the probative value of this evidence and its limited potential for prejudicing the jury against Defendant, the Court did not err in admitting this evidence at trial.

United States District Court
For the Northern District of California

CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion for JMOL (Docket No. 414) and motion for new trial (Docket No. 416).

IT IS SO ORDERED.

Dated: 9/18/2014

CLAUDIA WILKEN
United States District Judge